The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs on appeal to the Full Commission. Both parties waived oral argument. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injuries giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between the employee-plaintiff and employer-defendant on October 7, 1996.
3. The employer-defendant was self-insured with Gallagher-Bassett Services as Administrator.
4. The employee-plaintiffs average weekly wage was $442.55 per week.
5. The employee-plaintiff sustained an admittedly compensable injury by accident to his right knee on October 7, 1996.
6. Various medical records and other documents have been stipulated into evidence with the Pre-Trial Agreement.
 ***********
Based upon all of the competent evidence, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff worked in the shipping department as a forklift operator for the employer, beginning in September 1987. On October 7, 1996, plaintiff sustained an admittedly compensable injury to his body, primarily left and right knees, when he was crushed between two forklifts.
2. Plaintiff was immediately taken to the emergency room at Catawba Memorial Hospital. The treating physician diagnosed bruised knees, right greater than left, and a bruised left ankle and gave the plaintiff light-duty restrictions for one day. An October 9, 1996, emergency room record indicates the plant nurse called and related the employee continued to have pain in both knees and stronger medication was prescribed. An October 14, 1996, emergency room record indicated there was still bruising around both knees and the employee was still in pain.
3. The employee was told by the company nurse he was allowed only two visits to the doctor for the injury. After the two emergency room visits, the severe knee pain subsided after a couple of weeks. Thereafter, the employee had a constant dull aching pain in his right knee, difficulty bending the right knee such as when going up steps, and occasional sensation of grating and grinding in the knee.
4. The employee had no prior problems before the injury with his right knee except a mild knee injury many years before playing football for which he was treated with an ice pack and recovered. The employees testimony regarding continued knee problems after the injury at work is corroborated by the testimony of subpoenaed co-employee, Elaine Green. Ms. Green worked with the employee at Sarstedt, Inc. from April 1997 to April 1998. During that one year period, and especially before September 1997, Ms. Green recalled the employee mentioned right knee pain and appeared to be limping two to three times a week. She observed the employee had difficulty going up stairs and she had heard an audible "cracking sound from his knee when he bent the knee. The employees testimony about continuing knee problems was also corroborated by his wife.
5. After the October 7, 1996, injury at work, the employee thought his knee would eventually get better, but it did not, and he also thought that doctors could probably do nothing for the knee. Thus, the employee delayed further medical treatment.
6. About September 14, 1997, the employee was at home on the floor "wrestling with his two small children when he had increased right knee pain. He consulted with Dr. David Peltzer, a family physician, who saw the employee on September 15, 1997, and later referred the employee to Dr. dePerczel. Dr. Peltzer testified, and the Full Commission finds as a fact, that it is not uncommon for patients to delay getting treatment that they need. Dr. Peltzer also testified, and the Full Commission finds as a fact, if the employee had continuing right knee symptoms after the October 7, 1996, injury at work, the injury at work could certainly have caused or been one of the causes of the employees condition in September 1997.
7. Dr. John dePerczel, a board certified orthopedic surgeon, began treating the employee on October 23, 1997. After conservative treatment did not help, on April 17, 1998, right knee surgery confirmed a tear of the lateral meniscus and partial tear of the anterior cruciate ligament. Following the surgery, the plaintiff experienced some relief of his symptoms. Dr. dePerczel testified, and the Full Commission finds as a fact, that the October 7, 1996, injury at work was a cause of the knee problems revealed by surgery.
8. In September 1998, defendants sent the employees medical records to Dr. David DuPuy, a Charlotte orthopedic surgeon. Dr. DuPuy never talked to the employee or the other doctors. Dr. DuPuys opinion that the injury was not a cause of the employees knee problem is based on a mistaken assumption the employee had no knee symptoms between October 1996 and September 1997 and is therefore given little weight. Dr. DuPuy agreed that two traumatic events can cause a medical problem. Dr. DuPuy was unable to find a cause for the employees knee symptoms between October 1996 and September 1997 other than the injury at work.
9. The employee was unable to work April 17, 1998 through May 27, 1998, because of his knee surgery resulting from the compensable injury. He retains a 15% disability of the right leg as a result of the injury at work and is likely to need further medical treatment in the future.
10. It contradicts ordinary human experience to expect a patient to discuss every possible ailment at each family doctor visit. Quite the contrary, usually only the most pressing medical matters are discussed. Physicians are usually short of time and concentrate on the most acute matters. Additionally, it is common for patients to hope the condition will get better on its own and, as a result, they often delay medical treatment.
11. Plaintiffs average weekly wage was $442.55 per week, resulting in a compensation rate of $295.03.
12. Plaintiff is entitled to compensation of $295.03 per week for the period April 17, 1998 through May 27, 1998 and is further entitled to 30 weeks of compensation of $295.03 for the 15% disability to his right leg.
 ***********
Based on the foregoing findings of fact and conclusions of law the Full Commission makes the following additional:
 CONCLUSIONS OF LAW
1. On or about October 7, 1996, plaintiff sustained a compensable injury by accident to his left and right knees. Plaintiff suffered continuously from such injuries, which necessitated knee surgery. N.C. Gen. Stat. 97-2, 97-25.
2. Defendants must pay for all medical expenses, both past and future, growing out of the compensable injury that tend to effect a cure, provide relief, or shorten the period of disability. Under these standards, the Full Commission determines that the treatment provided by Dr. John dePerczel, including the knee surgery, provided relief and must be reimbursed by the defendants. N.C. Gen. Stat. 97-25.
3. Plaintiff is entitled to compensation of $295.03 per week for the period April 17, 1998 through May 27, 1998 and is further entitled to 30 weeks of compensation of $295.03 for the 15% disability to his right leg. N.C. Gen. Stat. 97-2 and 97-31.
4. Plaintiff is entitled to interest at 8% per year on this award from the date of the hearing before the Deputy Commissioner. N.C. Gen. Stat. 97-86.2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. At the same time that defendants pay attorneys fees as set forth below, defendants shall pay to plaintiff a lump sum of $7,965.81, consisting of 6 weeks of compensation for the period April 17, 1998 through May 27, 1998 and 30 weeks of compensation for the 15% rating of the right leg, minus attorneys fees. In addition, defendants shall pay to plaintiff 8% interest on $10,621.08 (36 weeks times $295.03) from the date of the hearing before the Deputy Commissioner. Interest shall be calculated as follows. For the weekly compensation predating the hearing before the Deputy Commissioner, that sum shall bear interest from the date of the hearing before the Deputy Commissioner until the lump sum is paid. For weekly compensation following the date of the hearing before the Deputy Commissioner, each weekly sum will bear interest from the date it was due until the lump sum is paid.
2. Defendants shall pay directly to plaintiffs attorney 25% of $10,621.08, or $2,655.27. Defendants shall pay all medical expenses growing out of plaintiffs compensable injuries, both past and future.
This 25th day of February 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/____________________ BERNNADINE S. BALLANCE COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
S/_______________ DIANNE C. SELLERS COMMISSIONER